FOR THE NORTHERN DISTRICT OF OHIO

North Lawrence, OH 44666

CHRISTOPHER BABB
Route 1, Box 172
Myrtle, MO 65778,

5:10 CV 1065

CHANCE Z. VILLSON
Durango, CO 81301,

Civil Action No.

JUDGE DOWD

COMPLAINT FOR

| | |
|---|---|
| the **UNITED STATES OF AMERICA,** | ) |
| | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.  Plaintiffs sue for declaratory and injunctive relief by and through undersigned counsel. They challenge the constitutionality of the Patient Protection and Affordable Care Act (Pub. L. No. 111-148, H.R. 3590), as amended by the Health Care and Education Reconciliation Act (Pub. L. No. 111-152, H.R. 4872) (collectively, the "PPACA") under the enumerated powers section of Article I to the United States Constitution (U.S. Const. Art. I, § 8); the Commerce Clause (U.S. Const. Art. I, § 8, cl. 3); the freedom of association protected by the First Amendment to the United States Constitution (U.S. Const. Amend. I); the liberty provision of the Fifth Amendment Due Process Clause (U.S. Const. Amend. V); and the right to privacy protected as a liberty right under the Fifth Amendment, as a right retained by the people under the Ninth Amendment, and as emanating from the First, Third, Fourth, Fifth, and Ninth Amendments to the United States Constitution.

2.  For the first time in American history, the federal government through the PPACA is compelling United States citizens, on sufferance of a tax penalty, to purchase, whether they care to or not, a single product: health insurance. The Constitution gives Congress no legal authority to, and the Bill of Rights disarms the federal government of any power to, compel citizens who have not purchased, and do not wish to purchase, health insurance to make that purchase as a condition of living and residing within a state of the United States.

3.    The federal government has no enumerated power under Article I, Section 8 to compel a U.S. citizen to purchase with after-tax dollars a particular product, here health insurance.

4.    The federal government lacks legal authority under Article I, Section 8, Clause 3 of the U.S. Constitution to compel a person who does not want to purchase health insurance and who is not engaged in interstate commerce involving health insurance to make such a purchase.

5.    The federal government lacks legal authority under the freedom of association protected by the First Amendment to the U.S. Constitution to compel a person to associate with a private health insurer as a means to pay for a particular kind of medical care approved by the federal government when that person wishes not to so associate.

6.    The federal government lacks legal authority under the Fifth Amendment to the United States Constitution to deprive a person of the liberty right to refuse the purchase of an unwanted product, here health insurance.

7.    The federal government lacks legal authority under the right to privacy protected by the Fifth Amendment liberty provision, the rights retained by the people in the Ninth Amendment, and rights emanating from the First, Third, Fourth, Fifth, and Ninth Amendments to the United States Constitution to force a person against his or her will to divulge highly personal and confidential information, possibly including, but not limited to, data concerning or derived from blood samples, urine samples, DNA samples, physical examinations, past or current illnesses or diseases, past or current listing of daily medications, mental health examinations, and other physical or emotional health data to a private health insurer and the government of the United States.

3

8.    Accordingly, Plaintiff hereby respectfully requests that this Honorable Court (1) declare the Patient Protection and Affordable Care Act unconstitutional under Article I, Section 8 (enumerated powers of Congress); Article I, Section 8, Clause 3 (commerce clause); the First Amendment (freedom of association); and the Fifth Amendment (right to liberty), and under the right to privacy protected by the Fifth Amendment liberty provision, the rights retained by the people in the Ninth Amendment, and the rights emanating from the First, Third, Fourth, Fifth, and Ninth Amendment to the United States Constitution, and (2) enjoin Defendants from enforcing the PPACA against Plaintiffs.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1346 (jurisdiction where the United States is a defendant).

10.    The Plaintiffs' requested relief is authorized under 28 U.S.C. § 2201 (declaratory relief) and 28 U.S.C. § 2202 (further relief), and the Federal Rules of Civil Procedure 57 and 65.

11.    Venue is properly vested in this Court under 28 U.S.C. § 1391(e) and 28 U.S.C. § 1402(a)(1) because the Plaintiff U.S. Citizens Association ("USCA") principal place of business is in this district; Plaintiff USCA's members of its Board of Directors reside in this district; and for all Plaintiff USCA members a substantial part of the events giving rise to this action are occurring in this district.

## PARTIES

12.    **Plaintiff** USCA is a national civic league with its principal place of business at 1236 Weathervane Lane, Suite 302, Akron, Ohio 44313-7992.  It is a non-profit organization incorporated under the laws of the State of Ohio.  The USCA has approximately twenty-three thousand (23,000) members.  Certain of its members, including the individual named plaintiffs,

are not enrolled in either a public or a private health insurance plan and do not qualify for

exemption from the PPACA mandate that they buy health insurance. USCA members are

United States citizens devoted to the preservation of conservative values. The USCA seeks to

"promote the virtues of Conservatism" through advertising, community action, and legal process.

The USCA aims to organize a conservative legal and philosophical movement across the United

States. The USCA considers protection for individual liberty, including the freedom to choose

how one wishes to dispose of after tax dollars, an essential conservative value, inextricably tied

to the preservation of the limited federal republic created by the U.S. Constitution. In particular,

USCA favors freedom of choice in the health insurance marketplace and a free market in

medical care and opposes efforts by the federal government to interfere with those market

processes. To protect that freedom and that republic, USCA is pursuing the instant litigation

against the federal government, seeking to invalidate the PPACA which deprives individual

liberty and thereby imperils the republic. USCA members who receive earned and/or unearned

income are federal taxpayers. All such members who are not currently insured are obligated

under the PPACA to obtain government-sanctioned health insurance. The PPACA's mandatory

insurance requirement applies to them without exemption. They do not declare religious

conscience exemptions (PPACA § 5000A(d)(2)(A)); they do not participate in a health care

sharing ministry (PPACA § 5000A(d)(2)(B)); they are United States citizens not presently

incarcerated (PPACA § 5000A(d)(2)(C) & (D)); for nearly all of such members their required

contribution under PPACA is less than 8 percent of their household incomes (PPACA §

5000A(e)(1)(A) & (B)); for nearly all of such members their respective taxpayer income is

greater than 100 percent of the poverty line (PPACA § 5000A(e)(2)); they are not members of

Indian tribes (PPACA § 5000A(e)(3)); and they claim no hardship with respect to their capability to obtain coverage under a qualified plan (PPACA § 5000A(e)(5)).

13.  **Plaintiff** Nathan R. Glick is a member of the USCA and a resident of the state of Ohio.  Plaintiff Glick does not have, and does not wish to acquire, any health insurance.  Plaintiff Glick is not exempt from the PPACA's mandatory insurance requirement.  He does not declare a religious conscience exemption (PPACA § 5000A(d)(2)(A)); he does not participate in a health care sharing ministry (PPACA § 5000A(d)(2)(B)); he is a United States citizen not presently incarcerated (PPACA § 5000A(d)(2)(C) & (D)); his required contribution under PPACA is less than 8 percent of his household income (PPACA § 5000A(e)(1)(A) & (B)); his taxpayer income is greater than 100 percent of the poverty line (PPACA § 5000A(e)(2)); he is not a member of an Indian tribe (PPACA § 5000A(e)(3)); and he claims no hardship with respect to his capability to obtain coverage under a qualified plan (PPACA § 5000A(e)(5)).

14.  **Plaintiff** Christopher Barr is a member of the USCA and a resident of the state of Missouri.  Plaintiff Barr does not have, and does not wish to acquire, any health insurance.  Plaintiff Barr is not exempt from the PPACA's mandatory insurance requirement.  He does not declare a religious conscience exemption (PPACA § 5000A(d)(2)(A)); he does not participate in a health care sharing ministry (PPACA § 5000A(d)(2)(B)); he is a United States citizen not presently incarcerated (PPACA § 5000A(d)(2)(C) & (D)); his required contribution under PPACA is less than 8 percent of his household income (PPACA § 5000A(e)(1)(A) & (B)); his taxpayer income is greater than 100 percent of the poverty line (PPACA § 5000A(e)(2)); he is not a member of an Indian tribe (PPACA § 5000A(e)(3)); and he claims no hardship with respect to his capability to obtain coverage under a qualified plan (PPACA § 5000A(e)(5)).

15. **Plaintiff** Shane K. Ellison is a member of the USCA and a resident of the state of Colorado. Plaintiff Ellison does not have, and does not wish to acquire, any health insurance. Plaintiff Ellison is not exempt from the PPACA's mandatory insurance requirement. He does not declare a religious conscience exemption (PPACA § 5000A(d)(2)(A)); he does not participate in a health care sharing ministry (PPACA § 5000A(d)(2)(B)); he is a United States citizen not presently incarcerated (PPACA § 5000A(d)(2)(C) & (D)); his required contribution under PPACA is less than 8 percent of his household income (PPACA § 5000A(e)(1)(A) & (B)); his taxpayer income is greater than 100 percent of the poverty line (PPACA § 5000A(e)(2)); he is not a member of an Indian tribe (PPACA § 5000A(e)(3)); and he claims no hardship with respect to his capability to obtain coverage under a qualified plan (PPACA § 5000A(e)(5)).

16. **Plaintiff** James Grapek is a member of the USCA and a resident of the state of Maryland. Plaintiff Grapek does not have, and does not wish to acquire, any health insurance. Plaintiff Grapek is not exempt from the PPACA's mandatory insurance requirement. He does not declare a religious conscience exemption (PPACA § 5000A(d)(2)(A)); he does not participate in a health care sharing ministry (PPACA § 5000A(d)(2)(B)); he is a United States citizen not presently incarcerated (PPACA § 5000A(d)(2)(C) & (D)); his required contribution under PPACA is less than 8 percent of his household income (PPACA § 5000A(e)(1)(A) & (B)); his taxpayer income is greater than 100 percent of the poverty line (PPACA § 5000A(e)(2)); he is not a member of an Indian tribe (PPACA § 5000A(e)(3)); and he claims no hardship with respect to his capability to obtain coverage under a qualified plan (PPACA § 5000A(e)(5)).

17. **Plaintiff** Eileen Dannemann is a member of the USCA and a resident of the state of New York. Plaintiff Dannemann does not have, and does not wish to acquire, any health insurance. Plaintiff Dannemann is not exempt from the PPACA's mandatory insurance

requirement. She does not declare a religious conscience exemption (PPACA §

5000A(d)(2)(A)); she does not participate in a health care sharing ministry (PPACA §

5000A(d)(2)(B)); she is a United States citizen not presently incarcerated (PPACA §

5000A(d)(2)(C) & (D)); her required contribution under PPACA is less than 8 percent of his

household income (PPACA § 5000A(e)(1)(A) & (B)); her taxpayer income is greater than 100

percent of the poverty line (PPACA § 5000A(e)(2)); she is not a member of an Indian tribe

(PPACA § 5000A(e)(3)); and she claims no hardship with respect to his capability to obtain

coverage under a qualified plan (PPACA § 5000A(e)(5)).

18.  **Defendant** Barack H. Obama is the President of the United States of America. As

President,Obama is charged with implementing the PPACA. Defendant Obama is sued in his

official capacity.

19.  **Defendant** Kathleen Sebelius is the Secretary of the United States Department of

Health and Human Services ("HHS"). As HHS Secretary Defendant Sebelius is responsible for

implementing, enforcing, and administering the PPACA. Defendant Sebelius is sued in her

official capacity.

20.  **Defendant** Eric H. Holder, Jr. is the Attorney General of the United States of

America. Defendant Holder heads the Department of Justice. He is the chief law enforcement

officer of the federal government. As Attorney General Defendant Holder is charged with

enforcing the civil and criminal laws of the United States, including the PPACA. Defendant

Holder is sued in his official capacity.

21.  **Defendant** Timothy F. Geithner is the Secretary of the United States Department of

Treasury. As Treasury Secretary, Defendant Geithner is head of the Internal Revenue Service

("IRS") and is responsible for enforcing the Internal Revenue Code, including overseeing the

collection of taxes, enforcing the tax laws, and enforcing certain penalty provisions in the

PPACA. Defendant Geithner is sued in his official capacity.

## STANDING

22.   Plaintiffs Glick, Barr, Ellison, Grapek, and Dannemann ("Individual Plaintiffs")

have standing because they are individuals directly affected by PPACA's mandatory health

insurance requirement.  Under PPACA, the Individual Plaintiffs are required to obtain health

insurance or suffer a financial penalty resulting in a loss of personal property.  The Individual

Plaintiffs currently do not have health insurance.  The Individual Plaintiffs do not intend to

obtain government-compelled insurance.  The Individual Plaintiffs suffer an injury-in-fact as a

result of PPACA, to wit, the tax penalty imposed for failure to obtain individual health insurance

under PPACA Section 5000A. *See Allen v. Wright*, 468 U.S. 737, 755-56 (1984) (injury must

directly affect the plaintiff).  The tax penalty under PPACA becomes effective on January 1,

2014.  Plaintiffs are not required to wait for the realization of that harm to bring suit. *See Rosen

v. Tennessee Com'r of Finance and Admin.*, 288 F.3d 918, 929 (6th Cir. 2002); *Blum v. Yaretsky*,

457 U.S. 991, 1001 (1982) ("[one] does not have to await the consummation of threatened injury

to obtain preventative relief").  In addition, Individual Plaintiffs suffer irreparable injury as a

result of the PPACA's constitutional rights violations because each is required to associate with a

private health insurer against his or her will; each is required to divulge confidential information

about his or her personal health status to a private insurer against his or her will; and each is

deprived of the Fifth Amendment liberty right to refuse the purchase of health insurance.

23.   Plaintiff USCA has standing as an association representing its members, including

Plaintiffs Glick, Barr, Ellison, Grapek, and Dannemann.  This lawsuit is in accord with USCA's

mission to defend conservative values by opposing federal regulations that deprive individuals of

liberty and thereby imperil the republic. An association has standing to bring suit on behalf of its members when:  (1) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to its organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 342 (1977) (Burger, C.J.).

24.  USCA members have standing because they are compelled to acquire health insurance under the PPACA or face a tax penalty and they will all suffer, whether presently insured or not, from a transformation of the medical marketplace affected by changes in health care delivery, service, and cost effected by the PPACA. The mandatory insurance requirement violates the members' constitutional rights. Their injuries are real and immediate because, absent judicial intervention, the PPACA will be enforced as enacted on January 1, 2014. This lawsuit is germane to the USCA's purpose of pursuing the rights of its members against federal legislation that conflicts with those members' conservative values, including their support for the protections afforded individual rights and liberties by the Constitution of the United States. Finally, the participation of every USCA member is not required. USCA does not seek monetary damages that would render a just verdict difficult to apportion. The USCA represents its members' common interests which oppose deprivations of liberty effected by federal laws and regulations. Its members universally oppose the PPACA's violation of members' constitutionally protected rights. USCA members have enrolled in the organization with the specific understanding that USCA would pursue on their behalf litigation against federal government rights violations, such as this litigation.

25.  Accordingly, the Plaintiffs possess article III standing to contest injuries suffered as a result of the PPACA.

## STATEMENT OF FACTS

26.    President Barack H. Obama signed into law the Patient Protection and Affordable Care Act on March 23, 2010.  Shortly thereafter, by means of reconciliation, Congress enacted the Health Care and Education Reconciliation Act of 2010, amending the PPACA.  President Obama signed into law the Health Care and Education Reconciliation Act on March 30, 2010. The two laws form the Federal Government's comprehensive health care reform law at issue in this case, hereinafter collectively referred to as the "PPACA."

27.    The PPACA modifies government health care programs such as Medicare and Medicaid, imposes obligations on private employers, creates new federal taxes, places restrictions on private health insurers, and requires almost every United States citizen not currently enrolled in a health insurance program to obtain private health insurance or suffer a tax penalty.

28.    The requirement that U.S. citizens not presently covered by health insurance purchase private health insurance is contained in the PPACA Section 5000A, which provides, in pertinent part:

(a) REQUIREMENT TO MAINTAIN MINIMUM ESSENTIAL COVERAGE.--An applicable individual shall for each month beginning after 2013 ensure that the individual, and any dependent of the individual who is an applicable individual, is covered under minimum essential coverage for such month.

(b) SHARED RESPONSIBILITY PAYMENT.--

(1) IN GENERAL.--If an applicable individual fails to meet the requirement of subsection (a) for 1 or more months during any calendar year beginning after 2013, then, except as provided in subsection (d), there is hereby imposed a penalty with respect to the individual in the amount determined under subsection (c).

(f) MINIMUM ESSENTIAL COVERAGE.--For purposes of this section--

(1) IN GENERAL.--The term 'minimum essential coverage' means any of the following:

    (A) GOVERNMENT SPONSORED PROGRAMS.--Coverage under--

        (i) the Medicare program under part A of title XVIII of the Social Security Act,
        (ii) the Medicaid program under title XIX of the Social Security Act,
        (iii) the CHIP program under title XXI of the Social Security Act,
        (iv) the TRICARE for Life program,
        (v) the veteran's health care program under chapter 17 of title 38, United States Code, or
        (vi) a health plan under section 2504(e) of title 22, United States Code (relating to Peace Corps volunteers).

    (B) EMPLOYER-SPONSORED PLAN.--Coverage under an eligible employer-sponsored plan.

    (C) PLANS IN THE INDIVIDUAL MARKET.--Coverage under a health plan offered in the individual market within a State.

    (D) GRANDFATHERED HEALTH PLAN.--Coverage under a grandfathered health plan.

    (E) OTHER COVERAGE.--Such other health benefits coverage, such as a State health benefits risk pool, as the Secretary of Health and Human Services, in coordination with the Secretary, recognizes for purposes of this subsection.

*See* PPACA § 5000A (26 U.S.C. § 5000A).

29.    The PPACA provides that by January 1, 2014, all United States citizens not currently insured must purchase a health insurance policy that is federally "qualified" (establishing an orthodoxy on the kind of care that will be covered) to avoid federal tax penalties. Unless overturned by a court of competent jurisdiction, Plaintiff USCA's non-insured members are certain to incur financial penalties under the PPACA and be forced to acquire private health insurance that they do not want.

30.    A number of members of the U.S. Citizens Association, including Individual Plaintiffs Glick, Barr, Ellison, Grapek, and Dannemann, are not enrolled in either a public or a

private health insurance plan and do not wish to be enrolled in such plans. Those members are thus penalized by the PPACA for their inactivity. Simply by virtue of their United States citizenship and residence within a state, they are compelled to purchase a single product, health insurance. Those members have done nothing to avail themselves of interstate commerce cognizable under the PPACA. Their decision not to purchase private health insurance has no effect on interstate commerce. No nexus exists between those members' personal decision to avoid contractual obligations with health insurance providers and the national economy.

31.    Plaintiff USCA includes United States citizens who are ineligible to participate in public health insurance plans and who elect not to obtain private health insurance. They variously wish to save, invest, or otherwise expend the thousands of dollars each year that the PPACA compels them to pay for private health insurance. A number of the uninsured members of the USCA wish to pursue alternative therapies and medicinal approaches for which they now pay out of pocket and for which neither public nor private plans currently provide nor expect to provide coverage.

32.    The decision to devote one's personal resources to pay for health care or health care of a particular kind, just like the decision to refuse treatment of a particular kind or to refuse payment for treatment altogether, is a deeply personal and intimate decision inherent in personal liberty and a hallmark of self-governance. It is affected by one's circumstances in life, preferences, view of alternative and integrative medicine, and numerous other unique predilections. The PPACA forcibly associates all U.S. Citizens at their own expense with government-qualified, and, thereby, orthodox health insurance policies. The PPACA fails to include any allowance for dissent from its mandate or for coverage of alternative or integrative therapies, presently disallowed by Medicaid and Medicare. The PPACA does not protect the

penultimate right of each U.S. Citizen to refuse payment for insurance for medical treatment or to refuse payment for insurance for medical treatment not desired. Rather, the PPACA mandates that almost all United States Citizens purchase health insurance deemed "qualified" without permitting any dissent or exception from that requirement.

33.    The decision to refrain from purchasing with one's own after tax dollars unwanted health insurance for unwanted medical care is a fundamental right. The Supreme Court has recognized that adults possess a fundamental right to refuse medical treatment. They likewise possess a fundamental right to refuse payment for that treatment or payment for plans that will cover the costs of such treatment. The government cannot, consistent with the fundamental right of personal liberty, compel a person to expend his or her own after tax dollars to purchase a particular product deemed essential by the government, but not by that individual, whether that be health insurance, a radio, a telephone, a computer, an electric car, solar heating, or daycare, among any number of items that could be viewed by elected officials as essential for one reason or another. While the federal government possesses the power to tax for the purpose of financing public welfare, it may not dictate that a citizen expend his or her own after tax dollars on particular products or services without depriving that citizen of his or her right to liberty protected by the Fifth Amendment and supported by the Ninth Amendment.

34.    The PPACA exceeds the limited, enumerated powers granted Congress in Article I, Section 8 of the United States Constitution; none of those enumerated powers, including the powers to regulate interstate commerce and impose taxes, permits legislation compelling every uninsured adult American citizen to purchase health insurance.

35.    The requirement of mandatory health insurance compels the uninsured members of Plaintiff USCA as a condition of citizenship to purchase a "qualified" health insurance plan and

to accept the requirements of that plan, depriving each of the right to refuse such a purchase and to dedicate his or her after tax dollars to savings, investments, or expenditures as he or she otherwise wishes.

36.    The Plaintiff USCA's members have the Constitutional right to be free from forced association with health insurance carriers, their various independent agents with mandatory tacked-on commissions to premiums, and medical providers.  The Plaintiff USCA's members have the right not to so associate or instead to associate with medical practitioners of their own choosing, including those who do not participate in or accept insurance, despite the fact that services they provide are not ones covered by health insurance plans deemed federally "qualified."  A number of health insurance carriers require an applicant to use non-employee insurance agents.  One is not permitted to apply directly for health insurance with the carrier company.  Every health insurance premium payment adds on a separate fee payable to the insurance agent.

37.    Moreover, the PPACA compels Plaintiff USCA's members to share their private and personal mental, physical and emotional health information with "qualified" contracting insurance carriers and their respective independent insurance agents without the right to dissent from so doing, thus violating their rights of association and privacy under the United States Constitution. *See NAACP v. Alabama*, 356 U.S. 449 (1958); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984); *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 107 S. Ct. 1940, 1945-46 (1987); *see also Rust v. Sullivan*, 500 U.S. 173, 174-75 (1991); *Thomas S. by Brooks v. Flaherty*, 699 F.Supp. 1178, 1203 (W.D.N.C. 1988)

38.    The PPACA's mandate that almost all uninsured Americans purchase "qualified" health insurance plans violates the United States Constitution Article I, Section 8, Clause 3 (the

Commerce Clause) in those instances where people, such as the aforementioned members of Plaintiff USCA, neither possess nor desire to possess any health insurance. Finally, the PPACA is an unconstitutional tax in violation of the United States Constitution Article I, Section 8, Clause 1.

## COUNT ONE

### THE PPACA VIOLATES THE COMMERCE CLAUSE

39. Plaintiffs incorporate by reference all averments contained in paragraphs 1 through 38, *supra.*

40. Congress may act to regulate only pursuant to its enumerated powers in Article I, Section 8. *U.S. v. Wall*, 92 F.3d 1444, 1445-46 (6th Cir. 1996) ("the power of Congress is by no means absolute: it may exercise only those powers enumerated in the Constitution"); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819). The federal legislative power derives solely from the federal Constitution.

41. In PPACA Section 1501, Congress expressly relied on its authority under the Commerce Clause in Article I (Article I, Section 8, Clause 3): "The individual responsibility requirement provided for in this section … is commercial and economic in nature, and substantially affects interstate commerce, as a result of the effects described in paragraph (2)." *See* PPACA § 1501(a)(1).

42. The United States Constitution Article I, Section 8, Clause 3 states that the United States Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." In *United States v. Lopez*, the Supreme Court held that Congress may regulate three categories of commerce: (1) the channels of interstate

commerce; (2) the instrumentalities of interstate commerce; and (3) "those activities having a substantial relation to interstate commerce … i.e., those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (interpreting federal statute that criminalized the possession of firearms within a school zone). Only the third category is implicated by Congress's mandatory insurance provision. United States citizens who do not possess and do not desire to possess health insurance, such as the Individual Plaintiffs and other members of Plaintiff USCA, do not engage in activities that substantially affect interstate commerce simply by residing in-state.

43. The provisions of PPACA must be examined under the *Lopez* rationale with consideration given to the Supreme Court's decision in *Raich. See Gonzales v. Raich*, 545 U.S. 1 (2005). In *Lopez*, the Supreme Court struck a federal statute (the Gun-Free School Zones Act) that made it a federal criminal offense for an individual knowingly to possess a firearm in a place that the individual reasonably believed was a school zone. *See Lopez*, 514 U.S. at 560. The *Lopez* Court evaluated the issue under the third prong, asking whether the regulated conduct "substantially affects" interstate commerce. *Id.* The Court identified four factors in its "substantially affects" analysis: (1) the statute should be connected with "commerce or any sort of economic activity"; (2) the statute should contain a "jurisdictional element which would ensure through case-by-case inquiry, that [the activity] affects interstate commerce;" (3) Congress must make reasonable findings that the activity in question impacted the national economy; or (4) the activity must have some nexus with the national economy. *Id.* at 561-64. PPACA fails the "substantially affects" test for interstate commerce.

44. The mandatory health insurance requirement in the PPACA violates the Commerce Clause by compelling the members of the USCA who do not have and do not wish to acquire

health insurance to purchase same. Congress is thereby regulating the *choice* to purchase health insurance, and that is not an economic regulation. The requirement is imposed on U.S. citizens who would otherwise have no participation in health insurance. That inaction has no effect on interstate commerce. Without the PPACA, citizen inactivity would have no bearing on the interstate market.

45. The Plaintiffs request a declaratory judgment that PPACA is invalid, not legally enforceable and without any force or effect against Plaintiffs, based on the United States Constitution Article I, Section 8, Cause 3.

## COUNT TWO

### THE PPACA VIOLATES THE FIRST AMENDMENT FREEDOM OF ASSOCIATION

46. Plaintiffs incorporate by reference all averments contained in paragraphs 1 through 45, *supra.*

47. The PPACA infringes Plaintiff USCA members' freedom of association guaranteed by the First Amendment to the United States Constitution. The Act requires Plaintiff USCA members to obtain health insurance "qualified" by the federal government. *See* PPACA § 5000A (26 U.S.C. § 5000A). Individuals must subscribe to those "qualified" health insurance plans whether or not they agree with the standards of care or kinds of services that the government prescribes as "qualified" for coverage. Regardless of the reason for a person's decision not to associate with a private insurer for health insurance, that reason—whether it be grounded in ideology or medical wisdom—is protected by the First Amendment right to freedom of association against any form of forced association through government compelled membership in a particular "qualified" private plan. By compelling Plaintiff USCA members,

and indeed all U.S. citizens who wish not to be insured in government "qualified" plans, to associate with and finance those plans against their will, the PPACA violates the First Amendment's protection for freedom of association.

48.    In *NAACP v. Alabama*, 356 U.S. 449 (1958), the Supreme Court held the freedom of association a fundamental right protected by the Constitution. *See id.* The right includes freedom from state coerced associations of all kinds. *See Thomas S. by Brooks v. Flaherty*, 699 F.Supp. 1178, 1203 (W.D.N.C. 1988). "Freedom of association ... plainly presupposes a freedom not to associate." *Id.* (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984)). Because the freedom of association is a fundamental right, implicit in the concept of ordered liberty, "[e]ven an indirect infringement on associational rights is impermissible and subject to the closest scrutiny." *Id.*

49.    The Plaintiffs request a declaratory judgment that PPACA is invalid, not legally enforceable and without any force or effect based on the freedom of association protected by the United States Constitution First Amendment (U.S. Const. Amend. I).

## COUNT THREE

### THE PPACA VIOLATES THE FIFTH AMENDMENT DUE PROCESS CLAUSE

50.    Plaintiff USCA members incorporate by reference all averments contained in paragraphs 1 through 49, *supra*.

51.    The Fifth Amendment states that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Under the Substantive Due Process doctrine, the Supreme Court has held that certain fundamental rights are encompassed within the term "liberty" in the Due Process Clause. Laws that deprive a person of liberty are

unconstitutional absent a compelling state interest where the means chosen are narrowly tailored to achieve the ends and are the least restrictive alternatives. *See, e.g,. Roe v. Wade*, 410 U.S. 113, 155 (1973); *Carey v. Population Services Int'l*, 431 U.S. 678, 686 (1977).

52.  The Courts have recognized a fundamental right to privacy or the right "to be let alone." *See Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J.., dissenting).  The Court focuses on the relationships involved, finding that distinctively personal aspects of one's life fall within the right of privacy. *See Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 107 S. Ct. 1940, 1945-46 (1987).  Thus, if a choice is sufficiently private or personal, the Courts must recognize the right as implicit in the concept of ordered liberty.  The decisions not to divulge medical confidences to a private insurer or its agents to obtain health insurance; not to receive medical treatment or treatment of a particular kind; and not to pay for unwanted treatments are private and personal choices.

53.  The Supreme Court has found fundamental the right to refuse medical treatment. The Constitution provides protection against unwanted bodily intrusion. *See, e.g., Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278 (1990) ("[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions"); *Rochin v. California*, 342 U.S. 165, 209-10 (1952) (protection against forced stomach pumping).  Concomitant with the right to refuse medical treatment is the right to refuse payment for unwanted medical treatment whether that payment is required directly by the government or through a proxy such as a government mandated "qualified" health insurance plan.

54.  The decision whether to participate in specified health insurance programs also violates the right to privacy because an individual's choice of doctor and type of care is an

intimate and personal one. The Plaintiffs have a constitutionally protected right to refuse

medical care or to obtain medical care of their own choosing. The Defendants cannot infringe on

those decisions by compelling individuals to contract for "qualified" private health insurance just

as they cannot compel a person to accept a public health insurance plan (all Medicare and

Medicaid programs may be refused by those eligible to receive coverage). Moreover, one's

liberty right "to life" would be deprived if PPACA advisory panels are not forbidden from

determining what level and kind of health care is to be provided, if at all, to the very seriously ill.

55. The Plaintiffs request a declaratory judgment that PPACA is invalid, not legally

enforceable and without any force or effect based on the United States Constitution Fifth

Amendment Due Process Clause (U.S. Const. Amend. V).

## COUNT FOUR

### THE PPACA VIOLATES THE RIGHT OF PRIVACY

56. Plaintiffs incorporate by reference all averments contained in paragraphs 1 through

55, *supra*.

57. The Supreme Court "has announced a general rule that medical records enjoy

constitutional protection from disclosure." *See Moore v. Prevo*, Slip Copy, 2009 WL 278969 at

*3 (W.D.Mich. 2009) (citing *J.P. v. DeSanti*, 653 F.2d 1080, 1099-90 (6th Cir. 1981);

*General Motors Corp. v. Director of Nat. Institute of Occupational Safety and Health*, 636 F.2d

163, 166 (6th Cir.1980), *cert. denied*, 454 U.S. 877 (1981) (interpreting *Whalen v. Roe*, 429 U.S.

589 (1977). The Court recognizes that individuals enjoy a constitutionally protected interest in

the confidentiality of their medical records. *In re Zuniga*, 714 F.2d 632, 641 (6th Cir. 1983), *cert.*

*denied*, 464 U.S. 983 (1983) (acknowledging a constitutionally protected privacy interest in the

confidentiality of a patient's psychotherapist's files, even if that interest is not absolute); *Doe v. Lockwood*, 89 F.3d 833 (6th Cir. 1996) (same).

58. The federal government cannot constitutionally compel disclosure of USCA members' private medical information to a private insurer, including, but not limited to, data concerning or derived from (1) blood samples, (2) DNA samples, (3) urine samples, (6) physical examinations, and (6) past or current illnesses, diseases, or medications, because the government's general interest in disclosure fails to outweigh the Plaintiffs' specific constitutionally protected interests in privacy, *See Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998). The government lacks a compelling interest to justify forcing all uninsured members of Plaintiff USCA to join a government "qualified" private health insurance plan, and its means are not narrowly tailored to achieve that interest and are not the least restrictive alternatives. *Id.* at 686.

59. The PPACA compels all adult U.S. citizens not insured to enter contracts with government "qualified" private insurance companies. As a matter of course, private insurance companies and/or their non-employee independent agents request medical information concerning all prospective insureds. That information is protected from disclosure by the USCA members' respective rights to privacy. In conventional insurance contracts, insureds voluntarily waive their rights and produce information for the purpose of acquiring health insurance. No such volitional waiver occurs under the PPACA which compels Plaintiffs to enter contracts against their will and, thus, forces them to disclose confidential medical information to private insurance companies and, by virtue of the government's right of access, to the government itself. One's medical information is personal and cannot lawfully be compelled to be given to a private insurer. The Defendants cannot infringe on that decision by compelling individuals to contract

for "qualified" private health insurance and divulge their confidential medical information, provide a urine sample, a blood sample, a DNA sample, or take a mental or physical examination, just as they cannot compel a person to accept a public health insurance plan.

60. The Supreme Court prohibits the government from doing indirectly what it cannot do directly in violation of an individual's constitutional rights. *See Speiser v. Randall*, 357 U.S. 513, 526 (1958) (finding that allowing government to condition tax exemptions on loyalty oath allows government to "produce a result which [it] could not command directly"); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (holding that government "may not deny a benefit... on a basis that infringes... constitutionally protected interests--especially, [the] interest in freedom of speech"); *see also Los Angeles Police Dept. v. United Reporting Pub. Corp.*, 528 U.S. 32, 48 (1999) (quoting *Perry*, 408 U.S. at 597) ("A contrary view would impermissibly allow the government to 'produce a result which [it] could not command directly'"). PPACA's mandate requiring all uninsured adult citizens to obtain "qualified" private health insurance compels the disclosure of constitutionally protected confidential medical information including the possible mandate to provide a urine sample, a blood sample, a DNA sample or the results of a mental or physical examination, to "qualified" private insurers—information that would otherwise remain confidential but for the government's mandate. Thus, the government violates Plaintiff USCA members' constitutional right to privacy by compelling disclosure of confidential medical information to "qualified" private insurance companies.

61. The Plaintiffs request a declaratory judgment that PPACA is invalid, not legally enforceable and without any force or effect based on the Plaintiffs' Right to Privacy arising from the Fifth Amendment liberty provision, the Ninth Amendment rights retained by the people, and

rights emanating from the First, Third, Fourth, Fifth, and Ninth Amendments to the United States Constitution.

## COUNT FIVE

### THE PPACA IS AN UNCONSTITUTIONAL DIRECT CAPITATION TAX

62.     Plaintiffs incorporate by reference all averments contained in paragraphs 1 through 61, *supra.*

63.     Congress lacks the power to impose a direct "capitation" tax on citizens to enforce the insurance mandate under PPACA.  Article I, Section 8, Clause 1 of the United States Constitution provides for the authority to tax and spend "to pay the Debts and provide for the common Defense and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States."  Article I, Section 9, Clause 4 states that "[n]o Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken."

64.     The PPACA tax penalty for not purchasing health insurance is a direct tax for which Congress has not arranged to have the receipts directly apportioned among the states based on census data.  *See Pen Mut. Indem. Co. v. C.I.R.*, 32 T.C. 653, 660 (1959) ("where exports are not involved, the authority of Congress to impose a tax is plenary, except that direct taxes must be apportioned among the States according to population, and duties, imposts, and excises must be uniform throughout the United States").

65.     Whether an exaction is an excise rather than a direct tax is determined by its operation and practical application rather than by any particular descriptive language contained in the tax law.  *See Exxon Corp. v. City of Long Beach*, 812 F.2d 1256 (9th Cir. 1987).  A plain reading of the PPACA reveals that the tax penalty for not obtaining health insurance is actually a

direct tax on citizens.  The PPACA's penalty provision in Section 5000A is applied to taxpayers

without any nexus to activity.  Indeed, unlike commonly acceptable excise taxes, the penalty tax

is assessed for *non-activity* rather than for an affirmative act.  *See, e.g., Covell v. City of Seattle*,

127 Wash. 2d 874 (1995) (tax based on voluntary action); *State v. Garza*, 496 N.W. 2d 448

(1993) (franchise tax).  An excise tax generally does not include inactivity as the triggering,

taxable event or transaction.  Indeed, because the tax applies to *all* United States citizens *unless*

they take affirmative action (purchase health insurance), the penalty is a "capitation" tax which