DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| U.S. Citizens Association, et al., ) | |
| ) | CASE NO. 5:10 CV 1065 |
| Plaintiffs, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| Kathleen Sebelius, et al, ) | |
| ) | |
| Defendants. ) | |
| ) | |

I.  Introduction

The plaintiffs, by their second amended complaint (Doc. 45), seek declaratory and injunctive relief with respect to the individual mandate to purchase health insurance beginning in the year 2014 as required by the recently adopted federal health care reform law as set forth in Patient Protection and Affordable Care Act, (hereinafter PPACA) Pub. L. No. 111-148, 124 Stat. 119 (2010), amended by Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (2010) (the "Act").  The plaintiffs allege the Act is unconstitutional with respect to the mandate to purchase health insurance by the year 2014 or suffer a penalty. Specifically, plaintiffs claim that the Act violates the Commerce Clause in Article I of the United States Constitution (Count 1), plaintiffs' freedom of expressive and intimate association guaranteed by the First and Fifth Amendments of the United States Constitution (Count 2), the due process clause of the Fifth Amendment of the United States Constitution (Count 3), and plaintiffs' constitutionally protected right to privacy (Count 4).

(5:10 CV 1065)

Plaintiffs request the following relief:

> (1)     Declare that the PPACA unconstitutionally exceeds Congress's authority under Article I, Section 8, because the Congress has no power to legislate that individuals purchase a particular product, here heath insurance, with after-tax dollars:
>
> (2)     Declare that the PPACA violates Article I, Section 8, Clause 3 because it regulates those who do not have health insurance and do not wish to have health insurance despite the absence of activity on their part affecting interstate commerce in health insurance or health care;
>
> (3)     Declare that the PPACA is unconstitutional under the First Amendment because it unlawfully infringes on the Plaintiff's members' freedom not to associate with private health insurers "qualified" under the PPACA;
>
> (4)     Declare that the PPACA is unconstitutional under the First and Fifth Amendments because it infringes the Plaintiffs' right to intimate association with doctors of their choosing and compels an intimate association with insurers that provide coverage for medical methods and approaches Plaintiffs do not desire.
>
> (5)     Declare that the PPACA is unconstitutional under the Fifth Amendment because it deprives the Plaintiffs of their fundamental liberty right to refuse payment for private health insurance for unwanted medical services;
>
> (6)     Declare that the PPACA is unconstitutional because it violates the Plaintiffs' right to privacy protected by the Fifth Amendment liberty provision, the Ninth Amendment rights retained by the people, and the rights emanating from First, Third, Fourth, Fifth, and Ninth Amendments to the United States Constitution in that it compels disclosure of confidential medical information to private insurers;
>
> (7)     Enjoin the Defendants from enforcing the PPACA against USCA members;
>
> (8)     Award plaintiffs' counsel fees and costs as is deemed appropriate and just under the Equal Access to Justice Act;

(5:10 CV 1065)

>(9) Retain jurisdiction of this action to ensure compliance with this Court's decree; and
>
>(10) Grant such other and further relief as the Court deems equitable, just and proper.

The defendants have moved to dismiss all four counts of plaintiffs' second amended complaint. Doc. 47. Plaintiffs have opposed the motion (Doc. 50), and defendants have replied (Doc. 57). An amicus curiae brief has been filed on behalf of the Alliance for Natural Health - USA[1] in support of the plaintiffs' opposition to defendants' motion to dismiss. Doc. 54.

For the reasons contained herein, defendants' motion to dismiss is granted in part and denied in part.

## II. Similar Litigation in Other States Attacking the Mandate to Purchase Health Insurance by 2014

The Congressional enactment that citizens shall be required to buy health insurance or suffer a penalty has resulted in litigation across and the United States, and specifically, in United States District Courts in California, Florida, Virginia and Michigan. The results in other United States District Courts to date, in responding to motions to dismiss, have been mixed. In Florida, United States District Court Judge Roger Vinson denied a similar motion to dismiss, as did District Court Judge Henry Hudson of Virginia. To the contrary, United States District Court Judge Dana M. Sabraw in the Southern District of California granted a similar motion to dismiss,

---

[1] The Alliance contends that it was formed in 2002 and that it has a divided membership of 448 U.S. citizens and corporations with cognizable constitutional injuries resulting from the PPACA as its physician members provide integrative and alternative medical service not covered by health insurance and stand to experience a reduction in demand for services resulting from PPACA's individual mandate.

3

(5:10 CV 1065)

and denied plaintiffs' motion for a preliminary injunction.

In the Eastern District of Michigan, District Court Judge George Caram Steeh, with the agreement of the parties, consolidated the trial and preliminary injunction hearing on plaintiffs' Commerce Clause and tax power claims pursuant to Federal Rule of Civil Procedure 65(a)(2). Also in that case, the parties agreed that there were no factual disputes to be resolved and the matter could be decided as a matter of law.  In an opinion issued after a hearing, Judge Steeh determined that the plaintiffs had standing, the case was ripe for the court's consideration, and that the court was not barred from hearing the case by the Anti-Injunction Act.  Judge Steeh then went on to analyze the merits of plaintiffs' Commerce Clause and tax power claims, concluding that Congress had the power under the Commerce Clause to enact the PPACA and that the penalty imposed by Congress for failing to comply with the minimum coverage provision is incidental to that power.  As a consequence, Judge Steeh denied plaintiffs' motion for a preliminary injunction and found for defendants on plaintiffs' first and second claims for relief, and dismissed those claims. *Thomas More Law Center, et al. v. Obama, et al.,* 2010 WL 3952805 (E.D. Mich.).  Judge Steeh subsequently entered a stipulated order dismissing plaintiffs remaining claims without prejudice, and plaintiffs have appealed to the United States Sixth Circuit Court of Appeals.

It is apparent to the undersigned that the controversy ignited by the passage of the legislation at issue in this case will eventually require a decision by the Supreme Court after the above-described litigation works its way through the various circuit courts.  Against that background, this Court does not intend to write a lengthy opinion with respect to the defendants'

(5:10 CV 1065)

motion to dismiss because the Court's decision will, in all likelihood, be without relevance by the time this case reaches the Supreme Court.

### III.  Defendants' Motion to Dismiss for Lack of Standing and/or Ripeness

In granting the government's motion to dismiss, Judge Sabraw in the Southern District of California, determined that the plaintiffs' claims failed on standing grounds failing to find injury in fact.  Continuing, Judge Sabraw opined that "Allegations of future injury will satisfy the requirement 'only if [the plaintiff] is *immediately* in danger of sustaining some *direct* injury as the result of the challenged official conduct'."  After finding no injury in fact, Judge Sabraw granted the government's motion to dismiss.

Judge Vinson's opinion, filed on the 14th of October, 2010, reached different conclusions as to both standing and ripeness.  Judge Vinson concluded that the 40-month delay before the mandate becomes effective in the year 2014, did not eliminate the issue of standing because of a certainty that the mandate will go into effect absent a judicial declaration or a change in the legislation by the Congress, and the fact of the certainty provided a sufficient basis to support standing.

As to the issue of ripeness, Judge Vinson declared:

> There is a "conspicuous overlap" between the doctrines of standing and ripeness and the two "often converge[]."  See Elend v. Basham, 471 F.3d 1199, 1205 (11th Cir. 2006).  Nevertheless, they warrant separate analyses.
>
> "Ripeness is peculiarly a question of timing.  Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreement."  Thomas v. Union Carbide Agr. Products Co. 473 U.S. 568, 580, 105 S. Ct.

5

(5:10 CV 1065)

> 3325, 87 L. Ed. 2d 409 (1985) (citations and alterations omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) (citation omitted). The ripeness inquiry turns on "'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 201, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983) (citation omitted). In the context of a facial challenge, as in this case, "a purely legal claim is presumptively ripe for judicial review because it does not require a developed factual record." Harris v. Mexican Speciality Foods, Inc., 564 F.3d 1301, 1308 (11th Cir. 2009).
>
> Because the individual mandate and employer mandate will not take effect until 2014, the defendants contend that those claims are unripe because no injury can occur before that time. However, "[w]here the inevitability of the operation of a statute against [plaintiffs] is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions come into effect." Blanchette v. Connecticut Gen. Ins. Corps., 419 U.S. 102, 143, 95 S. Ct. 335, 42 L. Ed. 2d 320 (1974). "The Supreme Court has long ... held that where the enforcement of a statute is certain, a preenforcement challenge will not be rejected on ripeness grounds." NAACP, supra, 522 F.3d at 1164 (citing Blanchette, supra, 419 U.S. at 143).
>
> The complained of injury in this case is "certainly impending" as there is no reason whatsoever to doubt that the federal government will enforce the individual mandate and employer mandate against the plaintiffs. Indeed, with respect to the individual mandate in particular, the defendants concede that it is absolutely necessary for the Act's insurance market reforms to work as intended. In fact, they refer to it as an "essential" part of the Act as least fourteen times in their motion to dismiss. It will clearly have to be enforced. See Commonwealth of Pennsylvania v. State of West Virginia, 262 U.S. 553, 592-93, 262 U.S. 553, 43 S. Ct. 658 (1923) (suit filed shortly after the challenged statute passed into law and before it was enforced was not premature where the statute "certainly would operate as the complainant states apprehended it would"). The individual mandate will have to be imposed and

(5:10 CV 1065)

enforced against the plaintiffs and others because if it is not, and with proscriptions against insurance companies denying coverage for pre-existing medical conditions, there would the potential for an enormous moral hazard.

The fact that the individual mandate and employer mandate do not go into effect until 2014 does not mean that they will not be felt in the immediate or very near future.  To be sure, responsible individuals, businesses, and states will have to start making plans now or very shortly to comply with the Act's various mandates.  Individuals who are presently insured will have to confirm that their current plans comply with the Act's requirements and, if not, take appropriate steps to comply; the uninsured will need to research available insurance plans, find one that meets their needs, and begin budgeting accordingly; and employers and states will need to revamp their healthcare programs to ensure full compliance.  I note that at least two courts considering challenges to the individual mandate have thus far denied motions to dismiss on standing and ripeness grounds.  See Virginia, supra, 702 F. Supp. 2d at 607-08 (determining that because the individual mandate "radically changes the landscape of health insurance coverage in America," it will be felt by individuals, insurance carriers, employers, and states "in the near future"); Thomas More Law Center v. Obama, 2010 WL 3952805, at *4 (E.D. Mich. Oct. 7, 2010) ("[T]he government is requiring plaintiffs to undertake an expenditure, for which the government must anticipate that significant financial planning will be required.  That financial planning must take place well in advance of the actual purchase of insurance in 2014 ... There is nothing improbable about the contention that the Individual Mandate is causing plaintiffs to feel economic pressure today.")

The Supreme Court and the Eleventh Circuit, as noted, have not hesitated to consider pre-enforcement challenges to the constitutionality of legislation when the complained of injury is certainly impending and more than a hypothetical possibility.  Because the issues in this case are fully framed, and the relevant facts are settled, "[n]othing would be gained by postponing a decision, and the public interest would be well served by a prompt resolution of constitutionality of the [the statute]."  See Thomas, supra, 473 U.S. at 582.  Therefore, the case is ripe for review.

(5:10 CV 1065)

After reviewing the opinions of Judge Sabraw and Judge Vinson, the Court finds the reasoning of Judge Vinson in keeping with this judge's view.  Consequently, the motion of the defendants to dismiss based on standing and ripeness is denied.

>IV.  The Motion of the Defendants to Dismiss Based Upon the
>Argument that the Penalty for Failure to Buy Health Insurance
>Should Be Dismissed as Prohibited by the Anti-Injunction Act

Once again, the Court is indebted to the thoughtful analysis of Judge Vinson with respect to whether the Anti-Injunction Act applies.  His analysis begins at page seven of a 65-page opinion and continues through to the top of page thirty, and is attached hereto as Appendix I.

Once again, the Court agrees with the thoughtful and careful analysis of Judge Vinson and, as a consequence, denies the motion to dismiss based upon the defendants' reliance on the Anti-Injunction Act.

>V.  The Motion to Dismiss Based Upon the Proposition that the Mandatory Requirement
>to Purchase Health Insurance Does Not Violate the Commerce Clause

Count One of the plaintiffs' second amended complaint alleges in part as follows:

> 35.  Congress may act to regulate only pursuant to its enumerated powers.  *U.S. v. Wall*, 92 F.3d 1444, 1445-46 (6th Cir. 1996) ("the power of Congress is by no means absolute: it may exercise only those powers enumerated in the Constitution"); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819).  The federal legislative power derives solely from the federal Constitution.

> 36.  In PPACA Section 1501, Congress expressly relied on its authority under the Commerce Clause in Article I (Article I, Section 8, Clause 3): "The individual responsibility requirement provided for in this section ... is commercial and economic in

8

(5:10 CV 1065)

> nature, and substantially affects interstate commerce, as a result of the effects described in paragraph (2)."
>
> 37.     The United States Constitution Article I, Section 8, Clause 3 states that the United States Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  In *United States v. Lopez*, the Supreme Court held that Congress may regulate three categories of commerce: (1) the channels of interstate commerce; (2) the instrumentalities of interstate commerce; and (3) "those activities having a substantial relation to interstate commerce .. i.e., those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (interpreting federal statute that criminalized the possession of firearms within a school zone).  Only the third category is implicated by Congress's mandatory insurance provision.  United States citizens who do not possess and do not desire to possess health insurance, such as the Individual Plaintiffs and other members of Plaintiff USCA, do not engage in activities that substantially affect interstate commerce simply by residing in-state.

The defendants' motion to dismiss contends that the individual mandate requiring the purchase of health insurance as set forth in Section 1501 under the title of "Requirement to Maintain Minimum Essential Coverage" is a proper congressional exercise under the Commerce Clause.  Secondly, the defendants contend that the passage of Section 1501 of the Act is a valid exercise of Congress's independent power under the general welfare clause.  Defendants argue that Count 1of plaintiffs' second amended complaint should be dismissed pursuant to 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can granted based on the recent teachings of the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).

(5:10 CV 1065)

At this stage of the proceedings, when considering the defendants' motion to dismiss, the issues before the Court regarding the commerce and the necessary and proper clauses constitute the primary issues before the Court with respect to the validity of the challenged Act.  The Court finds that the allegations advanced by plaintiffs in Count One of the second amended complaint at this point pass the "plausibility" teachings of *Twombly* and *Iqbal, supra*.

It is the Court's view in this case that plaintiffs' Commerce Clause claim is not subject to a final resolution based on a motion to dismiss, but requires additional consideration by the Court in further proceedings.  As a consequence, defendants' motion to dismiss Count 1 of plaintiffs' second amended complaint is DENIED

> VI.  The Motion to Dismiss as it Relates to Counts Two,
> Three, Four of the Second Amended Complaint

Count Two of the second amended complaint alleges that the PPACA violates the plaintiffs' freedom of expressive and intimate association guaranteed by the First and Fifth Amendments.  Count Three of the second amended complaint alleges that the PPACA violates the Fifth Amendment due process clause.  Count Four alleges that the PPACA violates their constitutional right to privacy.

In support of their motion to dismiss Count 2 (Doc. 47-1), defendants argue that:

> [a]bsent any plausible allegation that the statute has impaired plaintiffs' ability to express a message, this "mere association" does not violate the First Amendment. . . . because the [PP]ACA does not prohibit plaintiffs from joining together to advance their views on any subject, including the challenged provision . . . .

(5:10 CV 1065)

After considering plaintiffs' second amended complaint in the context of *Twombly* and *Iqbal's* heightened "plausibility" pleading standard, the Court concludes that Count 2 of plaintiffs' second amended complaint fails to satisfy that standard, and therefore cannot survive defendants' 12(b)(6) motion to dismiss Count 2.  The Court's review of Counts 3 and 4 under the *Twombly* and *Iqbal* analysis results in the same conclusion.

Accordingly, defendants' 12(b)(6) motion to dismiss Counts Two, Three and Four as set forth in the second amended complaint is GRANTED.[2]

### VII.  Conclusion

For the reasons contained herein, defendants' motion to dismiss is denied in part and granted in part.  Defendants' motion to dismiss Count One of the second amended complaint is DENIED.  Defendants' motion to dismiss Counts Two, Three and Four of the second amended complaint is GRANTED.

If either the plaintiffs or the defendants are of the view that a period of discovery is necessary prior to the filing of dispositive motions, counsel should so indicate by December 3, 2010, and indicate how much time for discovery is needed.

---

[2] As previously noted, the Court considers Count 1 to be the primary issue presented in this case.  As a consequence, the Court will not entertain a motion by the plaintiffs to amend their pleadings at this time.

11

(5:10 CV 1065)

If neither set of parties believe discovery is necessary, and upon such an indication by December 3, 2010, the Court will publish a schedule for dispositive motions.

IT IS SO ORDERED.

| | |
|---|---|
| _November 22, 2010_ | _/s/ David D. Dowd, Jr._ |
| Date | David D. Dowd, Jr. |
| | United States District Judge |